Order accordingly.

---

# LOWBER a. THE MAYOR, &c., OF NEW YORK.

*Supreme Court, First District; At Chambers, October,* 1858.

SUPPLEMENTARY PROCEEDINGS. — OFFICER OF MUNICIPAL CORPORATION.

Public moneys raised by a municipal corporation pursuant to law—*e. g.,* by tax —for purposes of government, and in the hands of its fiscal officer, are not the

---

* See also Overseers of Norwich a. Overseers of Pharsalia, 15 *N. Y. R.* (1 *E. P. Smith*), 341.

property of the corporation, or a debt due to it within the meaning of section 294 of the Code, so as to entitle a judgment creditor of the corporation to an order requiring the officer to pay over the moneys in satisfaction of the judgment.

It *seems*, that section 294 is not, however, inapplicable to the case of a judgment against a corporation.

Motion for an order under section 294 of the Code.

The plaintiff having obtained judgment against the defendants, issued execution, and subsequently obtained an order under section 294 of the Code for the examination of Mr. Andrew V. Stout, the chamberlain of the city.

Upon the examination, Mr. Stout testified, in substance, that he held, in his capacity as chamberlain of the city, moneys of the corporation to the amount of about $225,000, which were credited by him to the account of the city treasury. That he kept account of each and every appropriation, and that the funds in question were to the credit of the city treasury, subject to the draft of the mayor, comptroller, and clerk, to be drawn in behalf of any appropriation, by act of the Legislature, in the annual tax law, to the extent of such appropriation. The only moneys of the city in his hands not subject to such appropriations, were moneys credited to the commissioners of the sinking fund. That the amount of unpaid or unexpended appropriation was then greater than the balance in his hands. That the balance in his hands arose from the issue of revenue bonds in anticipation of the tax of 1858, and from moneys received this year from the collection of taxes.

The plaintiff now applied for an order that Mr. Stout pay to the sheriff the amount of the judgment in satisfaction thereof.

*E. P. Cowles* and *J. M. Barbour*, for the applicant.

*J. R. Whiting* and *J. W. Edmonds*, for Mr. Stout.

*R. Busteed*, for the corporation.

INGRAHAM, J.—The plaintiff having recovered a judgment against the defendants for land which he agreed to sell them, issued an execution to the sheriff.

While such execution was in the hands of the sheriff, he has

applied to me under section 294 of the Code, upon an affidavit stating, among other things, the recovery of the judgment and issuing of execution; and that Mr. Stout, the chamberlain of the city, has money in his hands belonging to, and the property of the defendants, to an amount exceeding $200,000, and asked for an order directing the chamberlain to pay such money to the sheriff, in discharge of the judgment.

It is objected, on the part of the chamberlain, that such a proceeding cannot be taken against a debtor of a corporation.

I had occasion to examine this question in Curtis a. Harrison (12 *How. Pr. R.*, 359), some time since, and came to the conclusion that, although " the 292d section was not applicable to corporations as debtors, still this section might be resorted to for the purpose of reaching property in the hands of third persons, belonging to a corporation against which an execution had been issued to the sheriff." I refer to the opinion in that cause for the reasons on which that decision was based. The case of Sherwood a. The Buffalo and New York Central Railroad Company (12 *How. Pr. R.*, 136), holding the reverse of that proposition, was not then published. By that decision of the general term of another district, it is held that the 294th section is merely auxiliary to the proceeding under the 292d section; and as the latter section cannot be resorted to against a corporation, the same rule must govern as to the 294th section.

The reasons given for this decision are two :

*First*, That the 294th section may be conducted without notice to the debtor; and, *second*, That if so conducted, the section would open the door to injustice and fraud, by enabling a creditor to get payment for a judgment which the debtor had previously paid.

The simple answer to both these objections is, that the justice may require notice to be given to the debtor before any order is made, and under section 294. The examination of the debtor under the 292d section would be no obstacle to the perpetration of a similar fraud, if, as is stated, after such examination proceedings may be instituted under the 294th section, without notice to the debtors, because in such a case the examination would not be brought to the knowledge of the magistrate.

I can see no reason to change the opinion heretofore expressed,

that this section may be applied to the case of corporations, as well as of individuals. It affords an easy and not expensive mode of reaching the means of paying an execution, which can as readily be used against a corporation as an individual; and there is no more reason to anticipate fraud in the one case than in the other.

The judge may require notice to be given to the judgment debtor, whether a corporation or individual (and such is, I understand, the invariable practice in this district), and the debtor will then be as amply protected as he could be on a personal examination. There is no reason why a corporation that will not pay a just claim, should be treated with any more leniency in enforcing laws than an individual.

I feel, however, some hesitation in adhering to these views against the opinion before referred to of the general term of the eighth district, and am relieved from disposing of the case on this point by the views I entertain of the other questions in the motion.

This section only applies to a person having property of the judgment debtor, or who is indebted to him, &c.

And the 297th section only allows the judge to order the property of the judgment debtor, in the hands of himself or another person, to be applied to the satisfaction of the judgment.

It becomes necessary, therefore, to inquire how far the examination of Mr. Stout discloses that he holds any property belonging to the defendants. The importance of this inquiry must be apparent to any one conversant with the vast interests of the government of this city; and I hesitate about expressing opinions in regard to it, arising as it does on this proceeding, which is not calculated to allow that thorough argument and examination which could be given to it in a different form of proceeding. As, however, the decision of this application must rest upon the decision of this question, I see no way to avoid it.

In the case of Baily *a.* The Mayor, &c., of New York (6 *Hill*, 531), Chief-Justice Nelson notices the distinction between the private rights, liabilities, and duties of a municipal corporation, and the powers and duties conferred and exercised for the public benefit.

For the one they are held responsible as individuals or private corporations; in the discharge of the other, they are to

be considered as having received the grant in a public or muni-
cipal character.

The same distinction must exist as to its liability, and as to
the property in the charge of the officers. The private property
of the corporation is undoubtedly liable for its debts, and such
liability may be enforced in the ordinary mode of collecting
debts. But the question is a very different one when it is in-
quired if the property belonging to the public, and held by the
municipal authorities for public purposes, can be applied to the
payment of such liabilities.

The examination of the chamberlain shows that the moneys
in his hands are the proceeds of bonds issued in anticipation of
taxes, in part, and also of moneys collected for the taxes of the
year; and that he has no other property in his possession be-
longing to the city. L have no hesitation in the conclusion that
money collected by tax is not the property of the defendants,
and does not come within the terms used in this action. The
tax law gives authority to raise by tax a specific amount, not for
their purposes as a corporation, but to be applied to the ne-
cessary expenses in the government of this city, and which
moneys the Legislature would have been compelled to raise
and disburse if they had not delegated that power to another
body.

In no sense is the money so to be raised made the property
of the defendants. It still remains the property of the people,
to be applied to the specific objects for which it is appropriated,
and guarded by the strictest provisions of law, even so far as to
inflict punishment for any appropriation of those funds to the
objects of the corporation different from those which the Legis-
lature have designated.

These views have been heretofore expressed by me in the case
of Green *a.* The Mayor, &c., of New York (5 *Abbotts' Pr. R.*,
104), and were adopted in that case in (5 *Ib.*, 268).

In that case, it is true, the question arose upon demurrer as a
matter of defence to a recovery; while here the plaintiff is a
judgment creditor. But I do not see that the objections to an
application, or rather a misapplication, of the public funds are
at all weakened by that fact.

If the defendants had no authority to use the funds so col-
lected by tax to pay the debt before judgment, they had no

authority to use it for that purpose after judgment; and if the law does not vest in the defendants a title to the property, so that they could use it for this purpose, I know of no law or rule which would justify the court to do by an order what the Legislature had expressly prohibited.

I should very much doubt if any property obtained by taxation, whether the same was in money or in other property, can be taken by execution against the corporation of New York, when such property either has been, or by law is directed to be applied to public purposes. It is not the property of the corporation, but is held by them for the public use, and the remedy to enforce claims against them by judgment can only be exercised against property acquired from some other source than by taxation.

The claim can be adjusted by a judgment, and if they own any property in their own right, by execution against such property; but beyond that, it seems to me, the remedy must be through the legislative power in authorizing taxation, and the power of the courts to compel a performance of the duties so conferred by the Legislature.

Any other rule would be subversive of the whole government of the city. If the money raised by tax for the public purposes of the city can be diverted against the provisions of law to the payment of judgments recovered upon other claims against the city in one instance, it can be done to an unlimited amount, and the moneys provided for the support of the poor, the pay of the police, the holding of elections, the payment of the public debt, or other purposes, be all consumed in the payment of judgments.

Such a course would render it impossible to conduct the government of the city; and it was to guard against such diversions of the money raised by taxes, that the Legislature has, from year to year, added restriction to restriction as to the expenditure of such moneys.

It is said that there are unexpended balances of former years that might be applied to the payment of this debt. It is not material now to examine this question, because the examination of Mr. Stout shows that he has no money in his hands, except the proceeds of this year's tax. Wherever such balances may be, they are not in his possession.

It is also said that those restrictions are only upon officers of the city, and do not prevent the court from ordering the application of the money to this purpose.

If the court could, with any propriety, order an officer of the city government to do an act forbidden by law (which I do not in any degree assent to), still such an order would be so directly against public policy and the welfare of the community, that I should not feel justified in making it.

There is also another and more conclusive reason, which was not adverted to on the argument, why the moneys raised by taxation are not subject to be applied as asked for by the plaintiff. It is, that it was not provided by the corporation, but was raised by the supervisors of the city and county : part of it for city purposes, and part of it for county purposes. Nothing in the act gives it to the corporation, or places it at their disposal, but directs the supervisors to raise it, and then directs its application to specific purposes. I see in the act nothing to make it the property of the corporation, which is the defendant here, and if not, the moneys so raised are in no way applicable to the payment of the debts of the corporation, except in the mode pointed out in the statute.

The examination which I have given to this question has been limited only to that portion of it which relates to the right of the plaintiff to have the moneys in the hands of the chamberlain applied to the payment of his judgment; but it opens an inquiry of great importance to the future welfare of the city government, as well as involving the rights of judgment creditors, as to the mode of enforcing their judgments, which must ere long receive a far more extended examination. Some provisions of law are evidently required for the payment of the creditors in such cases.

The difficulty might be remedied by authorizing, in such cases, the amounts to be raised by tax at the succeeding year, and staying, in the mean time, execution upon the judgments. The remedy, however, is with the Legislature ; the courts can only execute the law as it is.

The application for an order against the chamberlain must be denied.